**Nancy Pendleton EDMONDS, as widow and surviving spouse of Terry Allen Edmonds, deceased, Plaintiff-Appellant,**

**v.**

**CHAMBERLAIN MEMORIAL HOSPITAL,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 4, 1981.

Permission to Appeal Denied by
Supreme Court March 15, 1982.

Sam Jones, Shockey & Jones, Chattanooga, for plaintiff-appellant.

F. Graham Bartlett, McCampbell & Young, Knoxville, for defendant-appellee.

## OPINION

FRANKS, Judge.

Plaintiff's suit against the Chamberlain Memorial Hospital for the death of her husband was dismissed by summary judgment.

On appeal, plaintiff insists there are disputed issues of material fact as to whether the hospital was negligent in hiring Dr. M. Dean Loftis as its emergency room physician and whether he was an agent of the hospital while serving as its emergency room physician.

On the evening of April 20, 1978, plaintiff's husband was taken to the emergency room of defendant's hospital where the emergency room physician, Dr. Loftis, examined the deceased, sent him home, with advices to see his physician the next morning. Decedent's condition deteriorated and plaintiff called Dr. Loftis and advised of her husband's difficulties but the doctor did not advise the deceased be returned to the hospital. The next morning deceased was returned to the hospital where he was examined by the surgeon who had performed surgery on deceased a few days earlier; deceased was then rushed to the University of Tennessee Hospital in Knoxville where he expired during emergency surgery.

In the summer of 1977, Dr. Loftis was employed by defendant hospital as its emergency room physician. He served on the weekends at an hourly rate of compensation. This employment continued until midsummer 1978. On April 11, 1978, Dr. Loftis was admitted to the hospital staff and occupied office space in a complex housing other doctors known as the Chamberlain Memorial Medical Group, which was in close proximity to the hospital. These doctors enjoyed staff privileges at the hospital and, as a condition of being on the hospital staff, each doctor on a rotation basis served as the hospital's emergency room doctor during weekdays. On admission to the staff, Dr. Loftis, in addition to his weekend employment, was required to serve as emergency room physician and, on April 20, in the scheme of rotation he was serving as hospital emergency room physician when plaintiff's husband was presented to the emergency room for treatment.

During the latter part of August, 1978, it became manifest to the members of the hospital staff and administrative officials that Dr. Loftis was suffering from mental illness and, in September, his privileges at the hospital were suspended. Numerous affidavits and depositions were filed by defendant of physicians and others to the effect that from July, 1977 until the latter part of August, 1978 there was no indication Dr. Loftis was anything other than a normal, mentally competent and capable physician.

Plaintiff's allegation of negligence in the selection and retention of Dr. Loftis as a staff and emergency room physician was properly determined by summary judgment. It has long been the rule in this state that one who selects a competent physician for the care of another is not liable for mistakes made by that physician in the treatment rendered. *Quinn v. Railroad*, 94 Tenn. 713, 30 S.W. 1036 (1895). *Accord: Union Carbide & Carbon Corporation v. Stapleton*, 237 F.2d 229 (6th Cir. 1956); *Revell v. McCaughan*, 162 Tenn. 532, 39 S.W.2d 269 (1931). The *Quinn* rule has been extended to hospitals selecting physicians to practice on their premises. *Crumley v. Memorial Hospital, Inc.*, 509 F.Supp. 531 (E.D.Tenn.1979). Accordingly, we hold a hospital is not liable for the negligence of the physician selected by the hospital unless at the time the physician was chosen or subsequently as he performed at the hospital it was known, or should have been known, that the physician was incompetent to perform the duties he was reasonably

expected to undertake. No presumption of negligence in selection arises merely because the physician may have committed a negligent act after having been admitted to practice at a hospital.

The record establishes the hospital completed a credentials check on Dr. Loftis which included verifying he was licensed to practice medicine and inquiring as to his performance in his resident program. The inquiry established Dr. Loftis was a graduate of the University of Tennessee College of Medicine, was licensed to practice medicine, held memberships in the American Medical Association and Tennessee Medical Association and had successfully completed an ophthalmology resident program in Houston, Texas. Finally, in this regard, plaintiff argues the hospital was negligent in not having subjected Dr. Loftis to its peer review committee in the months he had been at the hospital prior to April 20, 1978. There is no indication that this omission in any way contributed to decedent's death. The physicians who worked with and observed Dr. Loftis testified he was a competent physician and no significant complaints had been made about his performance in the emergency room. There is no evidence that a peer review inquiry would have established he was incompetent. *See Crumley, supra.*

■ It is well settled that hospitals are liable for the negligent acts of their agents and employees even though they are selected with due care. *Baptist Mem. Hospital v. Couillens,* 176 Tenn. 300, 140 S.W.2d 1088 (1940); *Methodist Hospital v. Ball,* 50 Tenn. App. 460, 362 S.W.2d 475 (1961); *Sepaugh v. Methodist Hospital,* 30 Tenn.App. 25, 202 S.W.2d 985 (1946). This principle has been held applicable to interns working in a hospital's emergency room. *Methodist Hospital v. Ball, supra.* The hospital contends that since Dr. Loftis was manning the emergency room, not however as a paid employee but as a staff physician whose duty was to serve in the emergency room on a rotation basis with other staff physicians, he was acting as an independent contractor. The hospital relies heavily on *Stewart v. Crook Sanatorium,* 17 Tenn.App. 589, 69 S.W.2d 259 (1933), for its position and argues the case establishes a requirement that a hospital must have the right to control the physician before the physician can be considered the hospital's agent. Defendant asserts Dr. Loftis was not the hospital's agent because the hospital had no right to control the medical decisions and techniques performed by the doctor.

Although *Stewart* made mention that the hospital in that case had no right to control the physician, the court placed primary emphasis on the fact the patient came to the hospital under a medical plan provided by his employer, a plan which the employer had contracted with the physician to provide medical services and, by a separate contract, the hospital was required to provide facilities for treatment. The basis of the holding in *Stewart* is stated at page 593 of that opinion:

> [I]t appears from the undisputed evidence that Dr. Hollingsworth served the patients sent to the Sanatorium by the Railroad Company under a separate and distinct contract of employment with the Railroad Company. We are also of the opinion that the uncontroverted evidence shows that the services required by the Railroad Company of its physicians and surgeons *employed by it to treat its patients is separate and distinct in character and nature from the service rendered to its patients by the Sanatorium.* We are also of the opinion that under the uncontroverted evidence Dr. Hollingsworth *in his capacity as physician and surgeon to this patient had full and complete charge of the patient, and the patient was under his personal care and attention and separate and apart from his official connection with Crook Sanatorium,* ... [Emphasis supplied.]

*Stewart* is not controlling on the facts *sub judice* and simply holds that a physician does not become an agent of a hospital by admitting or treating his patients in the hospital.

Defendant also contends *Rural Educational Assn. v. Bush,* 42 Tenn.App. 34, 298

S.W.2d 761 (1956), supports its position that the hospital's lack of control over the physician's professional judgment is determinative. We do not agree with this analysis; in fact, the control factor in the context urged by the defendant was apparently rejected by the *Bush* court.

In *Bush*, a patient sued the owner and operator of a hospital alleging negligence on the part of the hospital staff physicians. The patient had come to the hospital for an examination on account of pain he was experiencing in his stomach and, since he did not have a physician of his own, he was referred to a staff physician of the hospital. That physician referred the patient to another staff physician who performed surgery, utilizing the hospital's surgical facilities. A sponge was left in the patient's intestines during surgery.

The Middle Section of this court, relying on the apparent authority principle of agency, held there was sufficient evidence to sustain the jury's determination that the operating surgeon was the agent of the hospital. The opinion observed:

Now, when plaintiff came to the hospital, he announced he wanted to enter the hospital for examination and treatment. He was referred to Dr. J. C. Gant, the Medical Director, who examined him and then had him examined by the specialists on the resident staff. Plaintiff did not know any of these doctors. He thought of them as the Madison Sanitarium and Hospital Doctors, and we think very reasonably so. 298 S.W.2d, at 767.

In *Bush*, the hospital had argued it was inconsistent to charge the jury a physician can be the agent of a hospital while at the same time charging the physician was totally in charge of the surgical operation in question. The court, in rejecting the argument, stated:

A corporation can only act through its agents or servants. An agent or servant may have complete charge of the actual work being done, but the corporation is liable for the negligence of its agent or servant in doing the work. 298 S.W.2d, at 769.

The *Bush* opinion places emphasis on whether the patient, in good faith reliance upon appearances, might reasonably consider the negligent physician connected with the hospital. It rejects the emphasis on the right to control the medical performance of the physician which defendant argues is determinative herein.

Defendant further argues the method of payment of the emergency room physician should control on the question of agency. That argument is succinctly answered in *Adamski v. Tacoma General Hospital*, 20 Wash.App. 98, 579 P.2d 970 (1978):

[W]here the patient contacts his personal physician and is by him admitted to a hospital for treatment, and the doctor looks directly to the patient for his fees, the courts uniformly treat the physician as an independent contractor. Such a holding results in a refusal to impose vicarious liability upon the hospital for the physician's medical mistakes even though they may occur on hospital premises.

The *Brown* formula does not, however, cover all the possible variations of the hospital-doctor-patient relationship; the most troublesome situation has been that where the patient, not having contacted his personal physician, presents himself at the hospital for treatment and is there provided with or referred to a physician, usually a specialist, who is neither an intern, resident or other salaried employee of the hospital. The courts generally look to all of the facts and circumstances to determine if the hospital and doctor enjoy such a "significant relationship" that the rule of respondeat superior ought to apply. When, in fact, the hospital undertakes to provide medical treatment rather than merely serving as a place for a private physician to administer to his patients, the physician employed to deliver that service for the hospital may be looked upon as an integral part of the total "hospital enterprise." In such cases, it should make no difference that the physician is compensated on some basis other than salary or that he

bills his patient directly. These are artificial distinctions, the efficacy of which has long since disappeared and to the perpetuation of which we do not subscribe. [Footnotes omitted.] 579 P.2d, at 975.

We conclude the record in this case establishes a disputed issue of material fact as to whether or not Dr. Loftis was the hospital's agent. The emergency room is operated in conjunction with defendant's other hospital facilities and it is required to staff the facility with physicians to treat members of the public who come to the hospital for emergency medical care.[1] The patient does not know or select the physician but relies upon the hospital for providing the physician. Significantly, when decedent's condition worsened after being turned away by Dr. Loftis, plaintiff called the hospital and apprised Dr. Loftis of the decedent's condition rather than attempting to contact the treating physician.

On the night in question, Dr. Loftis was not paid a salary for manning the emergency room as he otherwise was on the weekends but the hospital did attempt to collect the doctors' fees as the patients left the emergency room and signs in the emergency room informed the patient a fee would be charged for the doctor's services. The emergency room physician is essential to the hospital's existence: without the emergency room physician the emergency room would cease to function. All staff physicians were required to cover the emergency room on a rotating basis and without staff privileges a physician could not admit patients to the hospital. All emergency treatments took place on the defendant's premises and utilized defendant's supporting personnel and equipment.

While the matters raised by the defendant are matters to be taken into consideration by the triers of fact upon appropriate instructions, none on this record is determinative on the issue of agency as a matter of law. The summary judgment is affirmed on the negligent selection allegations and reversed on the issue of agency. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs incident to the appeal are assessed against defendant.

PARROTT, P. J., and SANDERS, J., concur.

---

1. A hospital patient is entitled to be provided with reasonable care in the provision of services generally rendered by hospitals. *Sepaugh, supra.* A hospital emergency room is a service generally provided by hospitals and the following discussion explains the emergency room phenomena:

> It is quite clear, then, that the public considers the emergency room to be a community medical center. It is the only place where the best equipment and facilities and at least some care are available on any day, at any hour, and without appointment. It does not require the presence of the sometimes unavailable family doctor. In fact, one explanation for this development is undoubtedly the concurrent disappearance of the traditional family doctor and the house call, and the advent of the clinic, regular office hours, and doctors' days off. [Footnotes omitted.] *"Hospital Emergency Service and the Open Door"*, 66 *Mich.L.Rev.* 1455 (1968), at 1457.