IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 16, 2016 Session

LINDA BEARD V. JAMES WILLIAM BRANSON ET AL.

Appeal from the Circuit Court for Houston County
No. 1368      Robert E. Burch, Judge

_____

No. M2014-01770-COA-R3-CV – Filed November 8, 2017

_____

This appeal is before the court on remand from the Supreme Court for our consideration of two issues that were not resolved by the Supreme Court in *Beard v. Branson*, No. M2014-01770-SC-R11-CV, __ S.W.3d __, 2017 WL 3725519 (Tenn. Aug. 30, 2017). This is a medical malpractice, wrongful death action in which Plaintiff seeks to hold Trinity Hospital, LLC ("Trinity") and James William Branson, M.D. ("Dr. Branson"), liable for the wrongful death of Ruth Hartley on September 29, 2004. Plaintiff alleged that Mrs. Hartley died because of delay in treatment of a bowel perforation she developed as a complication of colon surgery performed by Dr. Branson. In a partial summary judgment ruling, the trial court determined that a non-party, Stanley Anderson, M.D. ("Dr. Anderson"), the radiologist with whom Trinity contracted to provide services to its patients, was an apparent agent of Trinity and that Trinity was vicariously liable for any negligent acts or omissions of Dr. Anderson. Following a trial, the jury found in favor of Plaintiff and awarded damages in the amount of $750,000.00, allocating 50% of the fault for Mrs. Hartley's death to Trinity, 10% to Dr. Anderson, and 40% to Dr. Branson. The two issues we must consider are: (1) whether the trial court erred in granting partial summary judgment to Plaintiff by finding that Dr. Anderson was the apparent agent of Trinity; and (2) whether the trial court erred in assessing discretionary costs in the amount of $68,945.85 against Trinity. Finding no error, we affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S. delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

David L. Johnson, Nashville, Tennessee; James T. McColgan, III and Sherry S. Fernandez, Cordova, Tennessee, for the appellant, Trinity Hospital, LLC.

Philip N. Elbert and James G. Thomas, Nashville, Tennessee, for the appellee, Linda Beard.

**OPINION**

On September 13, 2004, Ruth Hartley ("Mrs. Hartley") was admitted to Trinity Hospital, LLC ("Trinity") to undergo colon surgery to be performed by James William Branson, M.D. ("Dr. Branson"). Following the surgery, Mrs. Hartley developed complications, including an intestinal obstruction, that required her to remain hospitalized longer than expected. On September 26, 2004, the nursing staff charted that Mrs. Hartley's incision site showed drainage. The following day, September 27, Dr. Branson ordered an x-ray and a CT scan of Ms. Hartley's abdomen and pelvis. Stanley Anderson, M.D. ("Dr. Anderson"), a private radiologist whose practice group was under contract with Trinity, reviewed the CT scan and reported that it indicated the possibility of a mechanical bowel obstruction. Dr. Branson read the report, disagreed with Dr. Anderson's conclusion, and took no additional action at that time.

On September 28, as Mrs. Hartley's condition continued to deteriorate, the nursing staff noted purulent drainage from the incision site and complaints of pain. At 1:55 a.m. on September 29, the nursing staff notified Dr. Branson that Mrs. Hartley's condition had worsened. Four hours later, at 5:50 a.m., the nursing staff notified Dr. Branson that fecal matter was leaking from the wound. Based on these reports, Dr. Branson ordered that Mrs. Hartley be immediately transferred to Centennial Medical Center ("Centennial") in Nashville. Due to the seriousness of her condition, she was transported by helicopter. When she arrived at Centennial, medical staff determined that Mrs. Hartley was in septic shock, which necessitated emergency surgery. While undergoing surgery, Mrs. Hartley went into cardiac arrest and was pronounced dead on September 29, 2004.

On September 12, 2005, Denver Hartley ("Plaintiff"), the surviving spouse, commenced this action by filing a pro se complaint against Trinity and against Dr. Branson to recover damages for the wrongful death of his wife.[1] The complaint asserted that the defendants negligently failed to diagnose and treat Mrs. Hartley's condition and it sought damages for Mrs. Hartley's pain and suffering, the economic value of her life, loss of consortium, funeral expenses, and other damages incurred. On February 15, 2006,

---

[1] As will be discussed later, Mr. Hartley was illiterate, and although he signed the pro se complaint, he did not author it. Attorney, Philip N. Elbert prepared the complaint. As explained by Mr. Elbert in the appellee's brief, Mr. Hartley filed the complaint pro se to afford counsel adequate time to perform an investigation before signing any pleadings, as contemplated by Tennessee Rule of Professional Conduct 5.5. On February 15, 2006, Mr. Elbert filed a formal notice of appearance on behalf of Mr. Hartley and has remained counsel ever since. On December 23, 2008, Mr. Hartley passed away. A suggestion of death was filed, and his daughter, Linda Beard, was substituted as plaintiff, pursuant to Tenn. R. Civ. P. 25.01(1), by agreed order on March 31, 2009. Throughout this opinion, we will refer to Mr. Hartley and Ms. Beard interchangeably as "Plaintiff."

attorney Philip N. Elbert filed a formal notice of appearance on behalf of Plaintiff and subsequently filed an amended complaint.

In the interim, on November 1, 2005, the defendants filed separate motions to dismiss on the ground the statute of limitations had expired. They contended that the pro se complaint was a nullity because Mr. Hartley, who was not a licensed attorney, attempted to assert Mrs. Hartley's wrongful death claims in a representative capacity. Thereafter, the defendants filed motions for summary judgment on the same grounds. The trial court denied the motions, the case proceeded to trial, and judgment was rendered in favor of Plaintiff.

In the appeal that followed, this court reversed the trial court, finding that the pro se complaint was a nullity and that the action was time barred. *See Beard v. Branson*, No. M2014-01770-COA-R3-CV, 2016 WL 1292904 (Tenn. Ct. App. Mar. 31, 2016), opinion supplemented on denial of reh'g, No. M2014-01770-COA-R3-CV, 2016 WL 1705290 (Tenn. Ct. App. Apr. 26, 2016). Plaintiff appealed, and the Supreme Court held that the action was timely. *Beard v. Branson*, No. M2014-01770-SC-R11-CV, __ S.W.3d __, 2017 WL 3725519, at *14 (Tenn. Aug. 30, 2017).

The Court reasoned that since the decedent's right of action passed to the surviving spouse pursuant to Tenn. Code Ann. § 20-5-106(a), Plaintiff, as the surviving spouse, acted on his own behalf and for his own benefit pursuant to his right of self-representation when he filed his complaint. *Id*. Consequently, Plaintiff commenced the action within the statute of limitations period. *Id*. Based on this determination, the Supreme Court reversed our decision and remanded the case for this court to rule on the remaining issues. *Id.*

Before Plaintiff commenced this action, he discovered that a CT scan of Mrs. Hartley's abdomen and pelvis had been taken at Trinity Hospital on September 27, 2004, two days prior to her death. On July 26, 2005, Plaintiff, through counsel, requested from Trinity copies of all records, specifically including the CT scan. On August 2, 2005, Trinity responded by stating that it could not locate the CT scan. Subsequently, Plaintiff requested a copy of the CT scan from Dr. Branson, Highland Radiology Group (the practice group with which Trinity contracted to provide radiological services) and Centennial, where Mrs. Hartley had been transferred by helicopter for further treatment. None had a copy of the scan.[2] When Trinity finally produced a copy of the CT scan

---

[2] On July 26, 2006, Trinity represented that the CT scan had been sent to Centennial Medical Center along with Mrs. Hartley when she was transferred. Plaintiff again requested the CT scan from Trinity in a March 1, 2006, Request for Production of Documents. In its response, Trinity stated that the CT scan was missing because it had been sent with Mrs. Hartley to Centennial Medical Center. Plaintiff requested that Trinity download another copy of the scan from the original data files on the server for its radiology department. According to Trinity, those files had been deleted. Approximately three years after

(continued…)

approximately three years later, Plaintiff's experts reviewed it and discovered that Dr. Anderson failed to note and report evidence of free air in Mrs. Hartley's abdomen, indicative of a bowel perforation. With this information, Plaintiff's experts could assess the extent of the dilatation of bowel referenced in the radiology report and critique the radiologist's failure to contact Mrs. Hartley's surgeon directly to discuss it.

As a result of Trinity's failure to produce the CT scan and Dr. Anderson's notes for approximately three years, Plaintiff was foreclosed from adding Dr. Anderson as a defendant. As a consequence, Plaintiff moved to estop Trinity from denying vicarious liability for Dr. Anderson's negligence to prevent any prejudice resulting from the delay. Additionally, Plaintiff moved for partial summary judgment on the issue of Dr. Anderson's apparent agency.

The trial court found that the undisputed material facts admitted by Trinity sufficiently established the elements of apparent agency. Based on this determination, the trial court granted Plaintiff's motion for partial summary judgment and held that, as a matter of law, Dr. Anderson acted as Trinity's apparent agent. The trial court reaffirmed its ruling at the close of Trinity's proof at trial and instructed the jury as follows:

> Dr. Anderson acted as an agent of Defendant Trinity Hospital in connection with the radiology service he provided. It is necessary that you determine whether Dr. Anderson was at fault and determine the percentage of fault, if any, chargeable to him. Because Dr. Anderson acted as an agent of Defendant Trinity Hospital, the percentage of fault you assign to Dr. Anderson will be the responsibility of Defendant Trinity Hospital.

At the conclusion of a two-week trial, the jury found in favor of Plaintiff and awarded damages of $750,000.00, allocating 50% of the fault for Mrs. Hartley's death to Trinity, 10% to Dr. Anderson, and 40% to Dr. Branson. Trinity was held vicariously liable for the 10% of the fault apportioned to Dr. Anderson.

The trial court entered judgment on this award on August 8, 2014. Thereafter, the trial court denied Trinity's motion for a directed verdict or a new trial and awarded discretionary costs to Plaintiff in the amount of $68,945.85. Trinity timely appealed. Dr. Branson did not appeal.

Trinity raised three issues on appeal: (1) whether the trial court erred by failing to dismiss the complaint as time-barred; (2) whether the trial court erred by awarding partial summary judgment to Plaintiff by finding that Dr. Anderson was Trinity's apparent

it was initially requested by Plaintiff's counsel, Trinity produced the CD, informing the court that it had been misfiled in an adjacent file.

agent; and (3) whether the trial court's award of discretionary costs against Trinity should be set aside. Because the Supreme Court decided the first issue, we limit our analysis to the two remaining issues.

## STANDARD OF REVIEW

We review a trial court's summary judgment adjudications de novo without a presumption of correctness. *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). In doing so, we make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.* (citing *Estate of Brown,* 403 S.W.3d 193, 198 (Tenn. 2013)).

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). The party moving for summary judgment bears the burden of demonstrating both that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83.

When the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either: (1) by affirmatively negating an essential element of the nonmoving party's claim; or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye*, 477 S.W.3d at 250.

Awarding discretionary costs in accordance with Tenn. R. Civ. P. 54.04(2) is within the trial court's reasonable discretion. *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002) (citations omitted). Nevertheless, a trial court's decision to award or deny discretionary costs should be guided by Tenn. R. Civ. P. 54.04(2). *Id.*

Because these decisions are discretionary, we are generally disinclined to second-guess a trial court's decision unless the trial court has abused its discretion. *Id.* (citations omitted). The "abuse of discretion" standard of review calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *Id.* (citing *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn.Ct.App.2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999)). Nevertheless, discretionary decisions must take the applicable law and the relevant facts into account. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *Id.* (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136–II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Med., Inc.*, 312 S.W.3d at 524-25.

## ANALYSIS

I.     VICARIOUS LIABILITY FOR ACTS AND OMISSIONS OF DR. ANDERSON

Trinity contends the trial court erroneously granted Plaintiff's motion for partial summary judgment by holding that Dr. Anderson was Trinity's agent, and consequently, instructing the jury as follows:

Dr. Anderson acted as an agent of Defendant Trinity Hospital in connection with the radiology service he provided. It is necessary that you determine whether Dr. Anderson was at fault and determine the percentage of fault, if any, chargeable to him. Because Dr. Anderson acted as an agent of Defendant Trinity Hospital, the percentage of fault you assign to Dr. Anderson will be the responsibility of Defendant Trinity Hospital.

Trinity relies in part on the undisputed fact that Dr. Anderson was not Trinity's employee and, instead, his radiology medical practice group had a contract to perform medical imaging studies for Trinity. It also contends that Plaintiff failed to satisfy the three-part agency test set forth in *Boren v. Weeks*, 251 S.W.3d 426, 436 (Tenn. 2008), which requires proof that:

(1) the hospital held itself out to the public as providing medical services;

(2) the plaintiff looked to the hospital rather than to the individual physician to perform those services; and

(3) the patient accepted those services in the reasonable belief that the services were provided by the hospital or a hospital employee.

Trinity admits it held itself out to the public as providing medical services; thus, the first element is established. However, Trinity contends that Plaintiff offered no evidence that would prove either the second or the third *Boren* element. Specifically, Trinity insists there is no evidence to show whether Mr. and Mrs. Hartley looked to Trinity to perform the radiological services at issue, or whether they believed that the hospital or a hospital employee provided the services. In this regard, Trinity relies on the fact that Mr. and Mrs. Hartley died before either of them could testify in a deposition or otherwise. As Trinity states in its brief:

> Given the complete lack of evidence concerning whether Mr. and Mrs. Hartley were looking to Trinity to provide the services at issue, it was impossible for Plaintiff to meet her burden of establishing the second *Boren* factor, and this is especially true given that all reasonable inferences were required to be made in favor of Trinity.

Plaintiff, who also relies on *Boren*, counters by insisting that the undisputed material facts establish all three essential elements. She correctly states that Trinity admitted it held itself out to the public as a provider of medical services, including radiological services. As for the second element, Plaintiff contends that the undisputed facts established that "Mrs. Hartley looked to Trinity to provide radiological services, and that those services were provided under circumstances that would cause any reasonable patient to believe the hospital or its employee was providing them," and that Trinity presented no facts to dispute her reliance on Trinity. As for the third element, Plaintiff contends Trinity failed to provide meaningful notice that the hospital disclaimed liability for physician negligence. As a consequence, Plaintiff insists that partial summary judgment on the apparent agency issue is warranted.

A. Patient's Belief as to the Provider of Service

The gravamen of apparent agency is conduct of the principal that would create the impression in a reasonable person that services are provided by the defendant or a servant or employee of the defendant. *Id.* at 433. Plaintiff insists that Trinity's conduct would have created in any reasonable person the objectively reasonable belief that the hospital provided the radiological services Mrs. Hartley received. Plaintiff also insists that direct evidence of a patient's subjective belief is not necessary.

"Apparent agency is established through the acts of the principal rather than those of the agent or through the perception of a third party." *Id.* When the actions or inactions

of a hospital create the impression that services are being rendered by the hospital or its servants, "a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient." *Id*. at 434 (quoting *Sword v. NKC Hosps., Inc*. 714 N.E.2d 142, 152 (Ind. 1999)). Tennessee courts recognize that patients rely on hospitals, not unknown third parties hired by hospitals, to provide services like diagnostic imaging. *See id*. at 436. As discussed in *Boren* and in *White v. Methodist Hosp. S*., 844 S.W.2d 642 (Tenn. Ct. App. 1992), a party may prove apparent agency "despite the absence of direct evidence of the patient's reliance on the alleged apparent agency relationship." *Boren*, 251 S.W.2d at 436. When the hospital's actions create an objectively reasonable belief that the hospital itself is offering services, "a court may infer that the patient reasonably relied on the health care provider's apparent authority to act for the hospital." *White*, 844 S.W.2d at 647.

Trinity insists that Plaintiff never showed that Mrs. Hartley subjectively believed that Dr. Anderson was employed by Trinity. For this reason alone, Trinity contends the inquiry should have ended, and the trial court should have denied Plaintiff's motion for partial summary judgment. Conversely, Plaintiff insists it offered sufficient evidence to establish that Mrs. Hartley looked to Trinity, not to Dr. Anderson, to perform her radiological services, and there was no evidence to establish that the issue of apparent agency could have "reasonably" been resolved in favor of Trinity at trial.

Plaintiff relies, in part, on our decisions in *Boren* and *Edmonds v. Chamberlain Memorial Hospital*, 629 S.W.2d 28 (Tenn. Ct. App. 1981). In *Edmonds*, 629 S.W.2d at 29, an emergency room physician treated the decedent, and the decedent died after being sent home. The plaintiff sued the hospital for the physician's negligence. *Id*. The trial court granted summary judgment to the hospital on the issue of agency on the grounds that the physician was an independent contractor. *Id*. On appeal, we reversed. *Id*. at 32.

The relevant facts from *Edmonds*, as recounted in *Boren*, are as follows:

> [T]he emergency room operated in conjunction with the rest of the hospital; the hospital required all of the physicians with staff privileges to work in the emergency room on a rotating basis, treating members of the public who came to the hospital for emergency care; and all emergency treatment took place on the hospital's premises and utilized the hospital's supporting personnel and equipment. The court also relied on the fact that "[t]he patient does not know or select the physician but relies upon the hospital for providing the physician."

*Boren*, 251 S.W.3d at 435 (citing *Edmonds*, 629 S.W.2d at 32).

Here, Plaintiff insists that numerous relevant facts are "identical to *Edmonds* with respect to all the salient facts that the *Boren* Court highlighted:"

The radiology department at Trinity "operated in conjunction with the rest of the hospital."

The radiologists reading Trinity Hospital CT scans were required to work "on a rotating basis, treating members of the public who came to the hospital."

All actual treatment, such as preparation for the CT scan, education about the CT scan, and the CT scan itself, "took place on the hospital's premises and utilized the hospital's supporting personnel and equipment."

At Trinity Hospital, patients in general and Mrs. Hartley in particular did "not know or select the physician but relie[d] upon the hospital for providing the physician."

Further, as this court discussed in *White*, 844 S.W.2d at 647, the inference of apparent agency is most likely to arise "where a hospital offers a service" and "the patient has no part in choosing the individual who will perform the service." In the case at bar, the undisputed facts reveal that Mrs. Hartley relied on Trinity to provide her radiology services because there is no evidence she had any knowledge of nor played any part in choosing Dr. Anderson, "the individual who . . . perform[ed] the service." *Id.*

Plaintiff also relies on the deposition of Dr. Branson:

Q. Do you know how the radiologist that did the CT scan pursuant to your order when Ms. Hartley was in the hospital in September of 2004, how that radiologist was selected?
A. Selected in the sense they had a call schedule, as we've discussed, and who was on call would have read it.
Q. Did Ms. Hartley or her family have any choice as to what radiology group would take the X-ray, read or interpret the X-ray?
A. Not if it was going to be done at Trinity Hospital.
Q. So if she was an in-patient at Trinity and needed a CT scan or an X-ray, the hospital determined which radiologist -
A. Which group.
Q. Which group?
A. That's correct.
Q. And which particular individual radiologist read the study would depend just on that radiology group's rotating schedule?
A. That's right.
Q. And -- but Ms. Hartley and her family had nothing to do with selecting the radiologist?

A.    That's right.
Q.    And weren't given any choice in what radiologist would read?
A.    That's correct.

Plaintiff further relies on the following facts: Mrs. Hartley never met or spoke to Dr. Anderson; the CT scanner and the "radiology department" were within the hospital; Trinity employees transported Mrs. Hartley to the CT scanner; Trinity employees explained the CT scan procedure to Mrs. Hartley; Trinity employees performed the CT scan; Trinity employees took dictation of the CT scan report; Trinity maintained the CT scan and the CT scan report; and the CT scan report displayed Trinity's name, address, and phone number and did not mention Dr. Anderson's radiology group.

Based on the foregoing undisputed facts, inter alia, Plaintiff insists she proved that "Mrs. Hartley relied on Trinity to perform the radiology services in question." We agree.

## B.  Reasonable Belief and Meaningful Notice

As for the reasonableness of Mrs. Hartley's belief that Trinity provided her radiology services, Plaintiff insists that the same analysis applies. In this regard, Plaintiff relies on *Boren* and its discussion of *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind. 1999). As explained in *Boren*, the reasonableness of the patient's belief is evaluated "by considering the totality of the circumstances, including the actions or inactions of the hospital, as well as any special knowledge the patient may have about the hospital's arrangements with its physicians." *Id.* at 434 (quoting *Sword*, 714 N.E.2d at 152). Plaintiff states in her brief:

> Every action Trinity took, with the exception of burying a single sentence (itself cryptic) in a form in a packet of admission paperwork, conveyed to Mrs. Hartley that Trinity itself was providing her radiology services. As discussed above, Trinity employees took Mrs. Hartley to the scanner, explained the procedure to her, and performed the CT scan, all on Trinity's premises. Mrs. Hartley had no opportunity to select a radiologist and definitely did not select Dr. Anderson. Trinity had no policy, procedure, or training requiring its staff to explain to patients that their radiological care, if any, would be provided by an independent contractor. Indeed, given the overwhelming impression Trinity created by its actions and inactions, it would be unreasonable to assume that anyone other than Trinity provided these services.

(Internal citations to the record omitted).

The foregoing notwithstanding, Trinity contends that it availed itself of the "meaningful notice" safe harbor. *See id.* at 436. As it explains in its brief, it refuted any

notion that Mr. or Mrs. Hartley believed that Dr. Anderson was an employee or agent of Trinity. In particular, Trinity came forward with two patient consent forms whereby both Mr. and Mrs. Hartley separately and explicitly acknowledged that "[a]ll physicians and surgeons furnishing services to me, including the Radiologist . . . are independent contractors and are not employees or agents of the hospital." Trinity insists it conspicuously displayed this disclaimer in the second paragraph of the first page of a simple two-page document. Trinity notes that Mrs. Hartley signed this form on September 13, 2004, and Mr. Hartley signed the same form three days later when Mrs. Hartley was assigned to another bed.

Plaintiff counters by contending that the consent was not "meaningful" as a matter of law. As for Trinity's reliance on the numerous consent forms Mrs. Hartley signed when admitted to the hospital, Plaintiff insists that the operative consent form was the second consent form signed by Mr. Hartley. On this point Plaintiff again relies on *Boren* and cases it cites that stand for the proposition that hospitals do not get carte blanche immunity based on consent forms. *See id.* To insulate a hospital from liability, the notice of disclaimer must be meaningful, and Plaintiff insists that Trinity provided inadequate notice. *See id.* The trial court agreed. It determined that the second consent form signed by Mr. Hartley was the operative form, and it went on to hold that no reasonable jury could find that it constituted meaningful notice.

Trinity used the second form to gain Mr. Hartley's consent for the so-called "swing bed" admission, and it was during that time when Mrs. Hartley received the CT scan at issue. Trinity had no policy that required its staff to explain the consent form. Moreover, as Plaintiff states, there is no evidence that anyone on Trinity's staff called that disclaimer to Mr. Hartley's attention or read it to him. This is relevant because Mr. Hartley was illiterate.[3] As Plaintiff states in the brief, "[g]etting an illiterate man with a dying wife to sign this notice gave no notice and, as a matter of law, failed the meaningful notice test."

As explained in *Boren*, 251 S.W.3d at 437, it can be significant if the disclosure for consent is buried in a standardized form. ("The acknowledgement in the consent form was found in the second half of one paragraph of a three-page form initialed and signed by Mr. Boren."). The *Boren* court emphasized that "[t]here is nothing in the record that indicates that the hospital called attention to that acknowledgement." *Id.* As a result, the court held that the consent form did not constitute meaningful notice as a matter of law. *Id.*

---

[3] Trinity suggests there is no evidence of Mr. Hartley's illiteracy; however, Linda Beard, Mr. Hartley's daughter, testified in her deposition as follows: "He can't read. . . . He never went to school."

Upon admission to the hospital, Mrs. Hartley was given seven pages of consent forms to sign, and the acknowledgment at issue was within these forms. Trinity's "Conditions of Admission and Authorization for Medical Treatment" form was on the sixth page. The two-page form included eleven items, some with subparagraphs or bullet points. Patients are required to initial some paragraphs, but not the paragraph entitled "Legal Relationship between Hospital and Physician." Although Mrs. Hartley did initial item #1, she did not initial in any of the other spaces provided, specifically items #7 and #8. Furthermore, she did not print her name above her signature, nor did she include the date in the space provided on the form. As Plaintiff explains:

> The fact that the relevant form was buried within seven pages of documents, that it was every bit as long as the two- and three-page forms found insufficient in *Boren* and *Cooper*, and that Mrs. Hartley failed to correctly fill out the form, indicates that any notice this lone subparagraph provided was far from meaningful, thus supporting the trial court's grant of summary judgment.

Also important is the fact that Trinity failed to call attention to the "Legal Relationship between Hospital and Physician" section. *Boren*, 251 S.W.3d at 437 and the cases cited therein held that this circumstance is significant. Here, Trinity had no policy, procedure, or training on this issue, and when Trinity was asked what Trinity employees told a patient about this form in its Rule 30.02(6) deposition, it stated:

Q     What would be explained to the patients about the forms.
A.     The first form usually is -- at the top of it there is a -- information on consent to treat, draw labs -- that sort of thing. Further down is consent to bill their insurance. And that would have just been told to them. This is to bill your insurance -- or something to that effect. They would have been told a place to sign for the -- for them to sign that they received the privacy practices and the message from Medicare.
Q.     Okay. So is there anything, specifically, in September of 2004, that your admitting clerks were trained to say or explain about the consent to treat form, in particular, to every single patient?
A.     Not to my knowledge.
Q.     Okay. Understanding that, what I'm asking is, is there any policy or procedure that would say that your admitting clerks would ask, specifically, the patient, did you understand any aspect of this form?
A.     I don't remember a policy saying that.
Q.     Is there anything that we haven't already discussed that your admitting clerks would have been trained to say to patients in September of 2004 about any of the forms that are contained in Exhibit 8?

A.    I don't remember anything else.

Based on the foregoing, we must conclude that Trinity did not call Mrs. Hartley's attention to this acknowledgment when she was admitted.

On the form, Trinity states in bold print:

**I UNDERSTAND THAT THERE WILL BE A SEPARATE CHARGE FOR PROFESSIONAL SERVICES. I UNDERSTAND THAT THE HOSPITAL DOES BILL FOR SOME PROFESSIONAL FEES. OTHERWISE, THE PROFESSIONAL FEES ARE NOT INCLUDED IN THE HOSPITAL'S BILL.**

However, the notice explaining the legal relationship between the physician and the hospital is buried in the fine print. It provides that physicians and surgeons, including radiologists, are "independent contractors and are not employees or agents of the hospital." The trial court found this dichotomy significant as revealed by the following exchange between the court and counsel:

THE COURT: And - but taking it just as - at it from an apparent agency standpoint, it hits all three elements: The- doctor-the patient obviously was- in the hospital, was taken to the - the CT scan. They know, they go in the room, they turn the lights off, things hum, she goes back to her room, and later they say, "Your CT scan" as they do. She doesn't know if the doctor who reads them is behind a screen, in the next building, or in Connecticut. And probably has no thought about it, the - the hospital holds itself out as - as doing these CT, x-ray, so forth services. And it's just – it's - apparent agency. There's no question.

The only thing that would - would prevent that from happening, taking effect, would be the - the - the notice the parties have signed that - that says that - and gave a list of so - so many specialists, one of which was radiologists. And I'm thinking it says is either not an agent or is an independent contractor, and I can't remember the words right now.

MR. HAUBENREICH: Your Honor, I believe it says independent contractor but we can - you know, I can pull the form.

MR. ELBERT: It doesn't deny agency. It says they're – it's an independent contractor, which a layperson doesn't know what that means.

THE COURT: Well, that's – that's my point. That's a point I was about to make. That's a brilliant statement because you anticipated me.

MS. FERNANDEZ: Your Honor, if I may read to you what it actually says. "All physicians and surgeons furnishing services to me, including the radiologists, pathologists, anesthesiologists, and the like are independent contractors and are not employees or agents of the hospital."

THE COURT: Okay. Thank you. So it was both. They are independent contractors and they're not agents.

First of all, I fail to see what - how that would put a reasonable person on notice that the hospital is not responsible for their actions, or would not be responsible for their actions. These are legal terms that even lawyers disagree about.

But to me one of the most telling things was what just came up here at the last, that actually the operative notice is the second notice.

MS. FERNANDEZ: May I address that, Your Honor?

THE COURT: Operative notice is the second notice. And the -it was -it was signed by the patients illiterate husband. And it's –it's not - I presume it's not contested that he was illiterate. It just -it can't be meaningful notice. And even if it were the original one, again, there –there's just this, quote, boilerplate language in there when you're -then you're looking at everything else, and I just don't see that there was any indication -any attempt by the hospital to make the notice meaningful. So I'm ruling that he's an apparent agent.

Now, I'm going further with the estoppel issue.... The negligence of Dr. Anderson, assuming - for the purpose of this ruling I'll assume that - was not discovered because of the hospital's negligence until after the statute of repose. The negligence of the hospital cost the plaintiffs that - that opportunity. And because of the breach of this statutory and regulatory duty, the - the plaintiffs have lost this obligation to - to recover in that - but for that - for that negligence, the alleged negligence, of Dr. Anderson. And it was through absolutely no fault of the plaintiffs at all.

And - and because of that, I'm going to reverse myself and - and state that the hospital is estopped - actually, in this motion for summary judgment, I'm not estopping them and denying it, I'm saying that - that Dr. Anderson was an agent. And - and I'm ruling as part - partial summary judgment that for both of those reasons, that - that Dr. Anderson was the agent of the hospital.

- 14 -

Based on the foregoing, we conclude as the trial court did that Plaintiff established the second and third *Boren* elements. Because Trinity has admitted the first element, Plaintiff established all three elements of the *Boren* three-part test. Therefore, we affirm the grant of partial summary judgment on the issue of Dr. Anderson's agency. Accordingly, we also find no error with the trial court's jury instruction on this issue.

## II.    DISCRETIONARY COSTS

After entering judgment on the jury's verdict, the trial court also awarded Plaintiff discretionary costs in the amount of $68,945.85. Trinity does not challenge the amount of the award; instead, it contends the entire award should be set aside. The entirety of Trinity's argument on this issue in its brief reads:

> After entering judgment on the jury's verdict against the Defendants, the trial court also entered an order awarding Plaintiff discretionary costs in the amount of $68,945.85. Because the underlying judgment against Trinity should be [set] aside for the reasons set forth above, the discretionary costs award against Trinity should also be set aside.

As a result of the Supreme Court's decision in this matter and our decision on remand, the underlying judgment has been affirmed in all respects. Therefore, there is no basis upon which to set aside the award. Accordingly, we affirm the award of discretionary costs.

## IN CONCLUSION

The judgment of the trial court is affirmed and costs of appeal are assessed against Trinity Hospital, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.