FILED
04/01/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 20, 2020 Session

## BEVERLY GARDNER V. SAINT THOMAS MIDTOWN HOSPITAL

**Appeal from the Circuit Court for Davidson County**
**No. 17C2226    Joseph P. Binkley, Jr., Judge**

---

### No. M2019-02237-COA-R3-CV

---

A patient filed a health care liability claim against a hospital, asserting the hospital was vicariously liable for injuries she suffered as a result of the anesthesia providers' conduct. The hospital moved for summary judgment, arguing that the anesthesia providers were not employed by the hospital and the hospital was, therefore, not liable for the anesthetists' actions as a matter of law because the statute of limitations had run on the plaintiff's direct claims against the anesthesia providers by the time the plaintiff filed her complaint against the hospital. The trial court granted the hospital's motion and dismissed the plaintiff's complaint, relying on the common law set forth in *Abshure v. Methodist Healthcare-Memphis Hospitals*, 325 S.W.3d 98 (Tenn. 2010). Acknowledging the conflict between provisions of the Tennessee Health Care Liability Act and the common law, we hold that the statute prevails. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Timothy T. Ishii, Nashville, Tennessee, for the appellant, Beverly Gardner.

Patrick M. Shegon and Amanda C. Hines, Montgomery, Alabama, for the appellee, Saint Thomas Midtown Hospital.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Beverly Gardner underwent a surgical procedure on May 8, 2016, at St. Thomas Midtown Hospital ("STM"). In the complaint she filed against the hospital, Ms. Gardner alleges that "[a]s a complication of anesthesia [she] suffered a traumatic intubation with right posterior lower pharyngeal laceration as a complication of oropharyngeal intubation with recurrent hemoptysis." She asserts that STM, "acting through its employees and/or agents," was "careless and negligent" in her care and treatment and that STM "is liable for any negligent acts and/or omissions of any actual or apparent agents and/or employees of [STM]." Ms. Gardner provided pre-suit notice to STM more than sixty days before filing her complaint in accordance with the requirements of Tenn. Code Ann. § 29-26-121, and she attached a certificate of good faith to her complaint as required by Tenn. Code Ann. § 29-26-122.

The hospital denied liability and raised the following affirmative defenses, among others:

2. To the extent that it is shown through discovery that the plaintiff or any non-party negligently caused or contributed to cause the alleged injuries and damages, STM intends to rely upon the doctrine of comparative negligence/comparative fault for their apportionment of damages, if any are awarded in this case.

3. STM admits that certain medical care was provided to plaintiff, Beverly Gardner, at its facility, but otherwise denies plaintiff's allegations and demands strict proof thereof. [STM] denies plaintiff's allegations of carelessness, negligence, breach of the standard of care, misrepresentation, and that any alleged injuries were caused by any act or omission by this defendant or any of its agents or employees. STM specifically denies that the physicians whose care is alleged in the Complaint were agents or employee[s] of this defendant. STM denies that the plaintiff is entitled to recover any damages from it.

Six months after filing its answer, STM moved for a qualified protective order permitting it to engage in ex parte interviews with Ms. Gardner's treating physicians, including Dr. Allison Tucker. STM identified Dr. Tucker as "anesthesiologist - treated patient during admission in question." Following discovery, STM moved for summary judgment. In the memorandum of law supporting its motion for summary judgment, STM wrote: "Plaintiff brings health care liability claims against [STM] premised solely on vicarious liability, but the underlying claims against the alleged agents (anesthesia providers employed by Anesthesia Medical Group) were barred by the statute of limitations

at the time suit was filed against [STM]." STM's memorandum was the first time, according to the contents of the appellate record, that STM identified Anesthesia Medical Group ("AMG") as the employer of Ms. Gardner's anesthesia provider(s).

The trial court granted STM's motion for summary judgment and dismissed Ms. Gardner's complaint. The court found that the statute of limitations for Ms. Gardner's direct claims against AMG began to run on May 8, 2016, the date when Ms. Gardner suffered the injury forming the basis of her claim. Relying on the case *Abshure v. Methodist Healthcare-Memphis Hospitals*, 325 S.W.3d 98 (Tenn. 2010), the court concluded that STM could not be held vicariously liable for any negligence by the anesthesia providers because, by the time Ms. Gardner filed her complaint against STM, her claims against AMG were "procedurally barred by operation of law."

Ms. Gardner appeals from the trial court's order granting STM's motion for summary judgment. She raises four issues on appeal: (1) whether the trial court erred in applying the incorrect standard to STM's motion for summary judgment under the HCLA; (2) whether a plaintiff can exclusively seek to hold a principal vicariously liable for the conduct of its agents under Tenn. Code Ann. § 29-26-121 when the statute of limitations has run as to the agents, but not as to the principal, based on the 120-day extension provided by Tenn. Code Ann. § 29-26-121(c); (3) whether the trial court's order violated the separation of powers doctrine by rewriting the HCLA statute of limitations; and (4) whether Tenn. Code Ann. § 29-26-121(a)(5) imposes an affirmative duty on the medical provider served with pre-suit notice to notify the plaintiff of other persons or entities that might be a properly named defendant.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. The parties do not dispute any facts that are material to the disposition of this case. Because the issues raised are limited to statutory construction, which involves questions of law, this case is properly resolved by summary judgment. *See Bidwell ex rel. Bidwell v. Strait*, No. E2018-02211-SC-R11-CV, 2021 WL 260975, at *5, __ S.W.3d __ (Tenn. Jan. 26, 2021); *Abshure*, 325 S.W.3d at 103. We review legal questions de novo, affording the trial court's decision no presumption of correctness. *Bidwell*, 2021 WL 260975, at *5; *Abshure*, 325 S.W.3d at 103.

B.  Pre-Suit Notice

This health care liability case is governed by the Tennessee Health Care Liability Act ("HCLA"), Tenn. Code Ann. §§ 29-26-102–122.  Our Supreme Court has described the applicable rules of statutory construction as follows:

> When determining the statute's meaning, we must determine and carry out the intent of the Legislature without broadening or restricting its scope. *Bray [v. Khuri]*, 523 S.W.3d [619,] 621 (Tenn. 2017) (citing *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013)); *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). We begin with the language chosen by the Legislature.  *Arden [v. Kozawa]*, 466 S.W.3d [758,] 764 (Tenn. 2015). "We presume that every word in a statute has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the General Assembly's obvious intention." *Ellithorpe*, 479 S.W.3d at 827 (citing *Johnson [v. Hopkins]*, 432 S.W.3d [840,] 848 [Tenn. 2013]). When statutory language is clear and unambiguous, we accord the language its plain meaning and ordinary usage in the context within which it appears, without a forced interpretation. *Bray*, 523 S.W.3d at 622; *Ellithorpe*, 479 S.W.3d at 827; *Stevens*, 418 S.W.3d at 553. We do not alter a statute or substitute our policy judgment for that of the General Assembly. *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013) (quoting *Britt v. Dyer's Emp't Agency, Inc.*, 396 S.W.3d 519, 523 (Tenn. 2013)).

*Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 85-86 (Tenn. 2018).  "[W]e presume that the Legislature knows the law and makes new laws accordingly." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015).

A key statutory provision in this case is Tenn. Code Ann. § 29-26-121(a)(1), which states:

> Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim *to each health care provider that will be a named defendant* at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(Emphasis added).  This provision is mandatory and requires strict compliance. *Runions*, 549 S.W.3d at 86.  Pre-suit notice enables "a potential defendant of a health care liability claim . . . [to] investigate the merits of the claim and pursue settlement negotiations before the start of the litigation." *Id.* (citing *Foster v. Chiles*, 467 S.W.3d 911, 915 (Tenn. 2015)).

Pre-suit notice promotes the "early resolution of claims, which also serves the interest of judicial economy." *Id.*

The plain language of the statute requires a plaintiff "asserting a potential claim for health care liability" to give pre-suit notice to "each health care provider that will be a named defendant." Tenn. Code Ann. § 29-26-121(a)(1); *see also Runions*, 549 S.W.3d at 87. The HCLA defines "health care provider" to include "[a] nongovernmental health care facility licensed under title 68, chapter 11," Tenn. Code Ann. § 29-26-101(a)(2)(B), and there appears to be no dispute that STM and AMG both qualify as health care providers. A "health care liability action" is defined as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based*." Tenn. Code Ann. § 29-26-101(a)(1) (emphasis added). The statutory language encompasses a claim for injury related to the provision of health care services, regardless of the theory of liability. (In this case, the plaintiff asserts that STM is liable under the theory of vicarious liability based on the actions of its agents and/or employees.) The HCLA defines "health care services" as follows:

> Health care services to persons *includes care by health care providers*, *which includes care by* physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other *agents, employees and representatives of the provider*, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services.

Tenn. Code Ann. § 29-26-101(b) (emphasis added). Thus, the provision of health care services includes the provision of "care by health care providers," and that care includes care by the provider's "agents, employees, and representatives." *Id.* Applying these provisions to this case, STM is subject to a claim for health care liability for the care provided by its agents and employees.

C. Statute of Limitations

The next question concerns how these provisions interact with the statute of limitations for HCLA claims. Tennessee Code Annotated section 29-26-121(c) states, in pertinent part:

> When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. . . . In no event shall this section operate to shorten or otherwise extend the statutes of

limitations or repose applicable to any action asserting a claim for health care liability, nor shall more than one (1) extension be applicable to any provider.

As the statute provides, when pre-suit notice is given to a health care provider under the HCLA, the statute of limitations is extended for 120 days. In the present case, Ms. Gardner provided pre-suit notice to STM and to its registered agent on April 25, 2017, thereby extending by 120 days the statute of limitations applicable to her claim against STM. Pursuant to Tenn. Code Ann. §§ 29-26-116 and 28-3-104, the statute of limitations began to run on the date the cause of action accrued, which the trial court determined to be the date of Ms. Gardner's surgery, May 8, 2016. The record shows that STM and its registered agent received pre-suit notice on May 8 and 9, 2017. Ms. Gardner filed her complaint on September 5, 2017, which was timely pursuant to the 120-day extension of the statute of limitations provided by Tenn. Code Ann. § 29-26-121(c).

Recognizing that Ms. Gardner's claim against it was timely under the HCLA, STM contends that the trial court properly granted its motion for summary judgment and dismissed Ms. Gardner's complaint because AMG, not STM, engaged in the conduct Ms. Gardner asserts was negligent. STM points out that Ms. Gardner failed to provide AMG with the requisite 60-day pre-suit notice and contends that her malpractice claim against AMG was barred by the statute of limitations. STM relies on *Abshure* to argue that the trial court properly granted its motion for summary judgment.

*Abshure* was decided under the law in effect prior to the amendments to the Tennessee Medical Malpractice Act requiring pre-suit notice and the 2011 enactment of the HCLA. *See Ellithorpe*, 479 S.W.3d at 824-26 (summarizing the development of the HCLA). In that case, Ms. Abshure filed a medical malpractice suit in general sessions court against a hospital and two doctors. *Abshure*, 325 S.W.3d at 101. She voluntarily dismissed her complaint and, less than a year later, she and her husband refiled the same claims against the hospital and the two doctors in circuit court. *Id.* at 102. The trial court entered an order of voluntary dismissal as to the two doctors on July 8, 2005. *Id.* On May 2, 2008, the hospital filed a motion for summary judgment arguing that the plaintiffs' "only claim against the hospital was premised on the hospital's vicarious liability for the acts of Dr. Ogle" and that their "claims against Dr. Ogle were now barred by operation of law by the statute of repose for medical malpractice actions and by Tenn. R. Civ. P. 41.01(2)." *Id.* The trial court accepted these arguments and granted the hospital's motion for summary judgment. *Id.* The Court of Appeals determined that, because the plaintiffs' initial case was filed before the statute of repose expired, the subsequent expiration of the statute of repose did not extinguish their vicarious liability claims. *Id.* However, we affirmed the trial court's dismissal based upon the second voluntary nonsuit.[1] *Id.* at 102-03.

---

[1] This court concluded that the plaintiffs' second voluntary nonsuit extinguished their right of action against Dr. Ogle "by operation of law" and precluded an assessment of liability against him. *Abshure*, 325 S.W.3d at 102-03; *see* TENN. R. CIV. P. 41.01(2); Tenn. Code Ann. § 28-1-105(a). Therefore, we reasoned, the

For purposes of the present appeal, we consider the Supreme Court's *Abshure* decision on the issue of whether the plaintiffs' complaint against the hospital based on vicarious liability "must be dismissed because [the plaintiffs'] direct claims against [the physician] became barred after they filed their complaint against [the hospital]." *Id.* at 105. The Court framed the issue more broadly as a question "regarding the limitations that should be placed on the ability of plaintiffs to pursue vicarious liability claims against a principal without also pursuing claims directly against the agent." *Id.* In this context, the Court examined relevant common law principles of vicarious liability. *Id.* at 105-10. To begin with, the Court set out the following "well-established" Tennessee "common-law framework":

> It has long been recognized in Tennessee that a principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority. *It is also generally recognized that a plaintiff may sue a principal based on its vicarious liability for the tortious conduct of its agents without suing the agent.* Even where the agent's conduct is the sole basis for the principal's liability, the agent remains a "proper, but not a necessary" party. *Thus, a plaintiff is free to sue the agent, the principal, or both.*

*Id.* at 105-06 (emphasis added) (footnotes omitted); *see also Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002).[2]

---

hospital could not be held vicariously liable for the physician's conduct. *Abshure*, 325 S.W.3d at 103. On appeal, our Supreme Court determined that the plaintiffs, by their voluntary dismissal, "gratuitously dismissed" their claims against Dr. Ogle and that there was no settlement of the claims. *Id.* at 112. The Court, therefore, disagreed with the result reached by the Court of Appeals on this issue.

[2] Our Supreme Court has explained that a principal is liable for its agent's conduct when the agent is acting "within the actual or apparent scope of the agency." *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008). "'Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude [it] from denying another's agency.'" *Id.* (quoting *White v. Methodist Hosp. S.*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992)). The issue in *Boren* was whether a hospital was vicariously liable for the alleged negligence of an independent contractor emergency room physician based on the theory of apparent agency. *Id.* at 428. Recognizing that situations exist "'where a hospital offers a service, such as the care of an anesthesiologist, and the patient has no part in choosing the individual who will perform the service,'" the *Boren* Court noted that it may be "'natural for the patient to assume reliance on the reputation of the hospital as opposed to any specific doctor.'" *Id.* at 436 (quoting *White*, 844 S.W.2d at 647). The *Boren* Court adopted the Restatement (Second) of Torts § 429 and stated:

> To hold a hospital vicariously liable for the negligent or wrongful acts of an independent contractor physician, a plaintiff must show that (1) the hospital held itself out to the public as providing medical services; (2) the plaintiff looked to the hospital rather than to the individual physician to perform those services; and (3) the patient accepted those services in the reasonable belief that the services were provided by the hospital or a hospital employee.

The Court in *Abshure* stated that, despite the rule allowing a plaintiff to sue either the agent, the principal, or both, "the courts have recognized that there are certain circumstances in which it would be improper to permit a plaintiff to proceed solely against a principal based on its vicarious liability for the conduct of an agent." *Abshure*, 325 S.W.3d at 106. The circumstances warranting an exception to the general rule include the following:

> (1) when the agent has been exonerated by a finding of non-liability; (2) when the plaintiff has settled its claim against the agent; (3) when the agent is immune from suit, either by statute or by the common law; and (4) when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal.

*Id.* We focus our attention on the Court's analysis regarding the fourth exception, which was the basis for the trial court's decision to dismiss Ms. Gardner's complaint: barring vicarious liability claims against a principal "'when the right of action against the agent is extinguished by operation of law.'" *Id.* at 109 (quoting *Johnson*, 74 S.W.3d at 345). Noting that "rights of action may be extinguished by operation of law in many different ways," the Court discussed two cases dealing with "procedural bars associated with the statute of repose and the res judicata doctrine." *Id.*

In *Huber v. Marlow*, this court held that "the plaintiffs could not amend their complaint to add a vicarious liability claim against the principal because their claims against the agent had been extinguished by operation of law—the running of the statute of repose." *Abshure*, 325 S.W.3d at 110 (citing *Huber v. Marlow*, No. E2007-01879-COA-R9-CV, 2008 WL 2199827, at *3-4 (Tenn. Ct. App. May 28, 2008)). In *Creech v. Addington*, the plaintiffs also attempted to amend their complaint to add a claim of vicarious liability. *Creech*, 281 S.W.3d 363, 371-72 (Tenn. 2009). The *Creech* Court "concluded that the plaintiffs could not pursue their vicarious liability claim against the principal because the doctrine of res judicata had extinguished their claims against the agents by operation of law." *Abshure*, 325 S.W.3d at 110 (citing *Creech*, 281 S.W.3d at 376-383). As reflected in these two cases, the fourth limitation on vicarious liability claims "arises when the plaintiff attempts to assert a vicarious liability claim against the principal after its right to assert a claim against the agent has become procedurally barred." *Id.* This exception stems from the idea that "plaintiffs should not be permitted to engage in an 'encircling movement' against the principal when they cannot pursue a 'frontal attack' on the agent." *Id.* (quoting *Graham v. Miller*, 187 S.W.2d 622, 625-26 (Tenn. 1945); *Raines v. Mercer*, 55 S.W.2d 263, 264 (Tenn. 1932)).

---

*Id.*

- 8 -

The *Abshure* Court emphasized that the *Creech* and *Huber* decisions "were heavily influenced by the fact that the plaintiffs did not assert a vicarious liability claim against the principal when they first filed suit, even though they could have." *Id.* at 111. Thus, the exception "does not apply in circumstances where the plaintiff has initially filed a vicarious liability claim against the principal, and the plaintiff's claims against the principal's agents are later extinguished by operation of law." *Id.* The Court further stated:

> Extending the procedural limitation recognized in *Creech v. Addington* and *Huber v. Marlow* to plaintiffs who have included a vicarious liability claim in their original complaint would be contrary to the traditional principle that plaintiffs may elect to sue the principal, the agent, or both. In circumstances where the plaintiff has properly asserted a vicarious liability claim against the principal, the extinguishment of the plaintiff's claims against the agent, by voluntary dismissal or otherwise, "merely produce[s] the same effect as if the [agent] had never been sued. . . ."

*Id.* (quoting *Rankhorn v. Sealtest Foods*, 479 S.W.2d 649, 652 (Tenn. Ct. App. 1971)). Applying these principles to the facts before it, the *Abshure* Court noted that the plaintiffs "filed a proper vicarious liability claim against [the hospital] before their claims against [the physician] were extinguished by operation of law." *Id.* at 112. Therefore, "the subsequent procedural bar of their claims against Dr. Ogle does not prevent [the plaintiffs] from pursuing their timely filed vicarious liability claim against the hospital." *Id.*

As mentioned above, the Court's analysis in *Abshure* was based upon the law in effect before the pre-suit notice provisions and the HCLA were in effect. If we apply the fourth exception to vicarious liability identified in *Abshure* to Ms. Gardner's vicarious liability claims against STM in the present case, the result would likely be to bar her claims because, when she filed her complaint against STM (September 5, 2017), the one-year statute of limitations had run on any direct claims against AMG (on May 9, 2017). Under the plain language of the HCLA, however, as discussed above, the plaintiffs' claims against STM were timely. It is evident that the common law principles described in *Abshure* conflict with the plain language of the HCLA.

When a statute conflicts with the common law, the statute prevails. *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 690 n.3 (Tenn. 2020); *Meyers v. First Tenn. Bank, N.A.*, 503 S.W.3d 365, 377 (Tenn. Ct. App. 2016). Moreover, "[w]hen the Legislature 'has acted to occupy an area of the law formerly governed by the common law, the statute must prevail over the common law in the case of conflict.'" *Buman v. Gibson*, No. W2013-01867-COA-R3-CV, 2014 WL 3893293, at *9 (Tenn. Ct. App. Aug. 11, 2014) (quoting *Hodge v. Craig,* 382 S.W.3d 325, 338 (Tenn. 2012)). The provisions of the HCLA at issue here, namely the definitions in Tenn. Code Ann. § 29-26-101 and the pre-suit notice provisions in Tenn. Code Ann. § 29-26-121, were substantially amended in 2008, 2009, and 2011. *See Ellithorpe*, 479 S.W.3d at 824-26. As our Supreme Court has stated, "The

overarching purpose of the pre-suit notice statute is to ensure that health care defendants receive timely notice of a forthcoming lawsuit." *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015). The new definitional provisions enacted in 2011 generally clarified the scope of the HCLA by substituting the term "health care liability" for "medical malpractice" and by defining a "health care liability action" to include "any civil action . . . alleging that a health care provider or provider" caused an injury related to the provision of health care services, "*regardless of the theory of liability on which the action is based.*" *Ellithorpe*, 479 S.W.3d at 826 (quoting Tenn. Code Ann. § 29-26-101(a)(1)).

The trial court's application of the common law set forth in *Abshure* to the facts here conflicts with the outcome prescribed by the HCLA. Subsection (c) of Tenn. Code Ann. § 29-26-121 states: "In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any action asserting a claim for health care liability, nor shall more than one (1) extension be applicable to any provider." As Ms. Gardner points out in her brief, were we to follow the common law rule relied upon by STM, the result would effectively shorten the time for pre-suit resolution of claims for vicarious liability cases brought solely against a principal. To avoid the trap envisioned by STM, a plaintiff choosing to sue only the principal would be required to give the principal pre-suit notice at least sixty days prior to the date upon which the statute of limitations applicable to an agent expires in order to benefit from the 120-day extension provided by Tenn. Code Ann. § 29-26-121(c). A plaintiff could also give pre-suit notice to the agent/employee, but Tenn. Code Ann. § 29-26-121(a)(1) requires pre-suit notice only for "a named defendant." Moreover, as discussed above, the HCLA defines "health care provider" to include nongovernmental hospitals, Tenn. Code Ann. § 29-226-101(a)(2)(B), and the statute does not change the common law rule that a plaintiff may choose to sue the principal and not the agent.

For all of these reasons, we conclude that, in health care liability cases in which a plaintiff chooses to sue only the principal, the provisions of the HCLA regarding pre-suit notice prevail over the common law exception in *Abshure* with respect to the tolling of the statute of limitations. This result is consistent with the purposes and the language of the HCLA. Therefore, the trial court erred in granting STM's motion for summary judgment and dismissing Ms. Gardner's complaint.[3]

D. Other Properly Named Defendant

When STM received Ms. Gardner's pre-suit notice, it was required by the HCLA to provide written notice to Ms. Gardner of "any other person, entity, or health care provider

---

[3]Whether an agency relationship exists is a question of fact that is determined by the circumstances of the case. *Boren*, 251 S.W.3d at 432. Whether an agency relationship existed between STM and AMG is a question of fact that the trial court did not address.

who may be a properly named defendant." Tenn. Code Ann. § 29-26-121(a)(5). This provision states:

> In the event a person, entity, or health care provider receives notice of a potential claim for health care liability pursuant to this subsection (a), the person, entity, or health care provider shall, within thirty (30) days of receiving the notice, based upon any reasonable knowledge and information available, provide written notice to the potential claimant of any other person, entity, or health care provider who may be a properly named defendant.

STM admits that it failed to comply with this section of the HCLA. STM argues that this provision did not apply to it because, "when [STM] received pre-suit notice, its position was and still is that its employees and the alleged agents would not be 'properly-named Defendants' because they were not negligent and did not cause any injury to the Plaintiff." According to STM, it "should not be obligated to notify the Plaintiff that a health care provider is a proper Defendant when [STM] does not believe the provider acted negligently or caused an injury to the Plaintiff 'based upon any reasonable knowledge and information available.'"

Our Supreme Court recently addressed this provision of the HCLA in *Bidwell ex rel. Bidwell v. Strait*. The plaintiff in *Bidwell* was the surviving husband of a patient who died following health care she received by Drs. Colburn and Strait. *Bidwell*, 2021 WL 260975, at *1. The plaintiff complied with the HCLA's requirement that he provide pre-suit notice to Drs. Colburn and Strait sixty days before filing a complaint naming them as defendants. *Id.*; *see* Tenn. Code Ann. § 29-26-121(a)(1). The plaintiff also provided pre-suit notice to three entities whom the plaintiff believed employed these two physicians. *Bidwell*, 2021 WL 260975, at *1. Despite the plaintiff's efforts to determine the doctors' employer(s), the plaintiff did not learn that Erlanger, a governmental agency, employed Drs. Colburn and Strait, and, therefore, did not provide pre-suit notice to Erlanger. *Id.* at *1-2. At least sixty days after providing the physicians with pre-suit notice, the plaintiff filed a complaint against Dr. Colburn, Dr. Strait, and the other defendants the plaintiff believed were liable for his wife's injuries and death. *Id.* at *2. None of the defendants the plaintiff served with pre-suit notice provided the plaintiff with notice of any other person, entity, or health care provider that may have been a properly named defendant within thirty days of receiving pre-suit notice, as required by Tenn. Code Ann. § 29-26-121(a)(5). *Id.* Dr. Strait identified Erlanger as his employer in his answer, but Dr. Colburn did not identify Erlanger as his employer in the answer he filed. *Id.* at *2-3.

Dr. Strait subsequently moved for summary judgment, arguing that he was immune from suit because his employer, Erlanger, was a governmental entity, governed by the Tennessee Government Tort Liability Act ("GTLA"), and it was a necessary party to the lawsuit. *Id.* at *3. The plaintiff moved for leave to amend his complaint to add Erlanger as a defendant, pointing out that Dr. Strait had failed to comply with Tenn. Code Ann. §

- 11 -

29-26-121(a)(5), as he was required to do. *Id.* Dr. Colburn, who was also employed by Erlanger, then filed a motion for summary judgment on the same grounds as Dr. Strait. *Id.* at *4. The trial court denied the plaintiff's motion to amend and granted the defendants' motions for summary judgment. *Id.* at *4. The trial court's judgment was reversed on appeal, and the Supreme Court granted the defendants' application for permission to appeal. *Id.*

Rejecting the defendant physicians' contention that Tenn. Code Ann. § 29-26-121(a)(5) was ambiguous, the Court found that the language of the statute "is clear" and requires those receiving pre-suit notice "'to provide the claimant with what amounts to a complete and total identification of all those "who may be a properly named defendant" based upon "the reasonable knowledge and information available" to the party that received pre-suit notice.'" *Id.* at *7 (quoting *Bidwell ex rel. Bidwell v. Strait*, No. E2018-02211-COA-R3-CV, 2019 WL 4464815, at *5 (Tenn. Ct. App. Sept. 18, 2019)). The Court acknowledged that § 29-26-121(a)(5) does not provide a remedy for a defendant's failure to comply with its requirements, but it did not hold that the lack of a remedy excuses a defendant's noncompliance.[4] *Id.* Contrary to STM's argument, a named defendant receiving pre-suit notice is not relieved of complying with this provision of the HCLA based on its belief that a non-named third party is not liable for conduct that may be proved negligent. Such an interpretation would effectively nullify the provision.[5]

## IV. CONCLUSION

The trial court's judgment granting STM's motion for summary judgment is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs of this appeal shall be taxed to the appellee, Saint Thomas Midtown Hospital, for which execution shall issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE

---

[4]The outcome in *Bidwell* was different than the outcome here, in part, because the *Bidwell* physicians' employer was a governmental entity and was a necessary party to the HCLA complaint pursuant to the GTLA. *See Bidwell*, 2021 WL 260975, at *3.

[5]All other issues Ms. Gardner raises are pretermitted.